On behalf of the Apollonians, Mr. Deacon S. DeCarlis. Gentlemen, are you both ready to proceed? Proceed when you're ready. Your Honor, may it please the Court, Brian Bassett on behalf of the Apollonians, the Tokyo Marine Specialty Insurance Company. The dispute before the Court today concerns a matter of contract interpretation. It's a rental agreement. That's correct, Your Honor. A rental agreement in addition to the interpretation of the Tokyo Marine policy, which is also a contract. As you can see from the brief, there's not much dispute regarding the terms of the Tokyo Marine policy. It's a partial general liability policy issued to Illini, not to JLG. JLG is not named as an insured party but is claiming insured status under a blanket official insured endorsement. To establish that insured status, JLG needs to identify a contract in which Illini, Tokyo Marine's name insurer, agreed to procure coverage and name JLG as an official insurer on the liability policy. And to do that, it cites to the lease agreement. And the lease agreement's terms are obviously critically important, but the purpose of the lease agreement are also relevant to the dispute. The lease agreement was entered into in order to allow JLG, the owner of a construction lift, or many construction lifts for that matter, to lease that equipment to Illini. And that Illini was able to use for itself or to sublease out to various contractors the use of that lift on construction sites for construction. Isn't the provision in the rental agreement all contained in one paragraph? The insurance requirements are contained in one paragraph. And presumably that's to fit this onto one page. Otherwise, it's on very small print, Your Honor, because you can see that there's a lot of terms here. But the important piece to recognize about that provision is that it contains two separate and distinct insurance requirements. Oh, there is the rub. How are these distinct or not distinct? I think that goes back to the purpose of this agreement. The first provision specifically states or addresses the physical damage to the equipment. Remember, JLG continues to own this lift while Illini rents it out. And so it specifically requires Illini to go out and get coverage, insurance coverage, in the event that that lift is damaged during the lease term. So to the extent that they're out on a construction site and the lift is damaged, Illini has gone out and procured coverage to make sure that the lift can be repaired or replaced as necessary. Makes sense. Okay. And then in addition to that, as part of that obligation, JLG has imposed an obligation on Illini to ensure that JLG is named as an additional insured on that coverage, so that JLG, either as an additional insured or a lost payee, can claim insured status for physical damage so that it can present the claim to Illini's insurance carrier to fix or repair that equipment. Counsel, this case went out on a summary judgment motion. That's correct. So based on the arguments, if we were to find there's some ambiguities in the language and the provisions of the rental agreement, and it's not unambiguously obvious, then theoretically summary judgment would be reversed, right? That's correct, Your Honor. Is that what you're asking? Well, Your Honor, we actually believe that the terms are unambiguous, in the sense that they do not require additional insured status to be procured for the liability coverage that Tokyo Marine issued here. We believe that the terms of the liability coverage requirements imposed upon JLG, imposed upon Illini in the contract, are clear and unequivocal. All that's required of Illini for purposes of liability coverage, which is, again, what's at issue here, is that it go out and obtain a commercial general liability policy for $1 million. You mentioned lost payee, but doesn't the provision of the agreement say lost payee and or additional insured? And doesn't that support JLG's argument that there are no subparts? No, Your Honor, because those terms, additional insured and or lost payee, are both contained in the provision addressing physical damage to equipment coverage. And Illinois law has addressed many cases in which a party is claiming additional insured status on a first party policy for physical damage to equipment. So they've confined the additional insured and lost payee obligations within the coverage obligations for physical damage to the equipment. They then say in a separate subcaptioned provision for bodily injury, property damage, liability to others, which is what we're dealing with here, that there is no obligation. They don't spell out any sort of obligation imposed upon Illini to go out and name them as an additional insured under that coverage. Now, clearly they could have, right? You keep saying there are no subparts here. Is that correct? Well, they are separated out into different paragraphs. But you can see if you look at the provision, they are separated out by terms, by headings. There's an initial heading for physical damage. But don't we look to the Thompson case that really is the end-all, be-all, and what's a subpart? I think Thompson, Your Honor, illustrates the proposition that you can obviously have separate and distinct provisions contained in a contract. But the mere fact that these are contained within one paragraph doesn't mean you cobble them together and make one broad insurance provision. Why not? Because they seem to be the same. I mean, respectfully, my question is, we have one paragraph. We can look at it this way and say, oh, there's still subparts. Or you can look at it this way and say it's one paragraph, it's one entity, it's one quantum of information. Therefore, there are no subparts. And how do we decide which way to go? I think the language is key here, Your Honor. I think the fact that you have these separate titles contained within that individual paragraph, the first specifically addressing physical damage to the equipment, and the second specifically saying bodily injury, property damage, liability to others. And that second provision, after that title, specifically says, in addition to the foregoing requirements for physical damage to the equipment. Right. Why can't I interpret that to say, in addition to, not separate from, separate from, but in addition to this, this. Because I think it then goes on to spell out the separate coverage that has to be procured by Illini for the benefit of itself. That provision specifically obligates Illini to separate and apart from physical damage. It's the separate and apart that you keep throwing in there that I can't find in this agreement. These are two different types of insurance policies. And so I believe, Your Honor, that the fact that they're separated out into these different sentences, right, within the same paragraph, admittedly, but different sentences with a different title, that they're separated out. I believe that that's clear based on the terms of the language there. And I think that it's critical to understand that this is a JLG document, that JLG could have easily imposed within the bodily injury, property damage, liability to others section that it was Illini's obligation to go out and procure liability coverage. So you're saying as the drafter it should be construed against them, sort of what you're arguing? We do believe so, Your Honor. I think that ultimately, I think what we're trying to argue is that the court should not insert language in the contract that could have easily been included by the parties. And here, for whatever reason, JLG decided to not include that language in the liability coverage obligation imposed upon Illini. The court ruled on the summary judgment. Did somebody, one of the parties, ask for sanctions on attorney's fees? Your Honor, there was a section 155 bad faith claim asserted by JLG against Tokyo Marine. The court found, based on the arguments raised, that 155 is not appropriate. Didn't the court find, in so many words at each side, presented a reasonable interpretation? The initial ruling by the court acknowledged ambiguity in the contract between JLG and Illini. So how does that bear on the analysis? Well, I think, I will say that after seeking some clarification on that ruling, the court reversed course a bit and said that after looking at it, I don't think it's ambiguous. So although she initially acknowledged some ambiguity, I think she eventually said. Do you agree with her position? I believe it's unambiguous in our favor, but she ultimately ruled that it was unambiguous in favor of JLG. But I do believe, Your Honor, that to the extent there's ambiguity there, either it should be construed against JLG or perhaps more likely should be remanded for further evidence to consider what the purpose and interpretation of the contract is. But respectfully, I don't think there is any ambiguity. I think it's clear that these are two separate, distinct requirements imposed upon Illini. These are two different types of insurance with two different purposes, and JLG had its wants and desires as to the physical damage coverage, and it wanted to be an additional insured on that coverage, and it had wants and desires as to the liability. It's an interesting case because both of you seem to agree on one thing. It's unambiguous in your favors. That's correct, Your Honor. It happens sometimes. It doesn't come up very often. Right. So in a nutshell, that's why we believe that the language is clear and there is no contract in which Illini agreed to procure additional insured status for JLG. There are two other important issues along those same lines, Your Honor, the first being that the contract itself, the lease agreement, was not actually entered into JLG Industries. The appellee here who is the defendant in the underlying claim is JLG Industries. You're raising that first time on appeal. That's correct, Your Honor. The JLG Service Corporation, I believe, is the name of the entity, also called Service Plus. I may have got that name wrong. It's the entity that actually entered into the contract for Illini. And so even to the extent that court rules that there are these liability insurance requirements in favor of JLG, it's to a different separate entity altogether, and JLG specifically pleads that it is a separate, distinct affiliate of Service Plus. So even if the language was sufficient, it certainly doesn't kick them over the line and establish additional insured status. And even beyond that, the contract specifically requires that Illini obtain coverage in the form of a certificate of insurance. And the law in Illinois is clear that the certificate of insurance confers no rights upon a certificate holder, and there's case law to support the fact that the obligation to procure a certificate for a third-party punitive additional insured is not sufficient to establish additional insured status. And that argument is as to Service. Correct. That's correct, Your Honor. Well, Service is not a party to the underlying case. The only party that's claimed additional insured status is JLG Industries. And again, you did not raise that before the trial court. Correct, Your Honor. Correct, Your Honor. But we still believe that the evidence is strong enough to support reversal on appeal. So, you know, I think the United States insurer's court is that a decision is the most on point on these particular issues. That court recognized that there may be insurance obligations imposed upon a named insurer to get certain types of coverage for the benefit of a third party, but unless it spells out clearly and unequivocally that the obligation is in connection with the commercial general liability policy, as we have here, that that other party, that punitive additional insured, is not entitled to insured status. And so we believe the case law strongly supports Tokyo Marine's position that JLG does not qualify as an additional insured. But even if they were able to get their foot in the door, overcome all three of those hurdles, there's still a fourth obstacle standing in their way to additional insured status. The additional insured endorsement requires that for JLG to be entitled to coverage, it must show at least some potential that its liability arises out of the negligence of Illini, Tokyo Marine's additional insured. Doesn't the additional insured endorsement here provide coverage to organizations that Illini was required by written contract to name as such? Well, the contract, the policy, if I understand your question correctly, Your Honor, the policy obligates or I'm talking about the additional insured endorsement. Correct. And that's the basis for JLG's claim for coverage under the policy. Yes, the requirements are that JLG identify a contract, which is in this case the lease agreement, in which Illini agreed to name it as an additional insured. And clearly, as I've indicated, we do not believe that the lease agreement qualifies as such. We believe it falls short in that regard because it only requires a lease agreement. Obeying even a contract. Oh, it is a contract, Your Honor. Okay. We don't dispute the fact that it's a contract. It's not the contract. Correct. It's not a contract sufficient to entitle them to additional insured status. That's right, Your Honor. But even if that contract was enough to establish that Illini agreed to get coverage and name them as additional insured, JLG still has to show that its liability potentially arises out of the negligence of Illini. And the focus here is on what the underlying pleadings have asserted against JLG. JLG is the only named defendant named by the underlying injured party. And the allegations concern the defective design manufacturer of this particular lease. Isn't it also about training? Well, there's an allegation about training, Your Honor, but it's not entirely clear what it concerns. It addresses negligent design and manufacturer, but the training piece just simply says that the failure to properly train to avoid the foregoing issues, which could potentially be interpreted as training its own employees. Ambiguous again. There you go. But Illini was the one that contractually agreed to provide the training. There is an obligation imposed upon Illini for that, Your Honor. But there's no evidence or suggestion in the pleading itself that indicates that Illini actually was performing any sort of training for the benefit of the plaintiff or anyone else on the site. In fact, Illini had farmed out. That helps you? Well, the allegations have to at least establish that there's a potential that the liability imposed upon JLG concerned Illini's negligence. But the point I was trying to make, Your Honor, is that Illini leased this piece of equipment out to the plaintiff's owner, and that lease obligation imposed an obligation upon the plaintiff's employer to actually train the employer as well. But there's no indication what the – But wouldn't that be something of a contribution or a third-party claim? And JLG has asserted a third-party claim for contribution and contractual indemnity against Illini. But that pleading cannot circumvent the rule that the allegations against JLG are the focus of the additional insurance inquiry. Illinois courts are clear that a third-party complaint filed by punitive additional insurance, JLG, cannot be used to manufacture a claim in entitlement to coverage under Illini's policy. I have one final question. What JLG is looking for here is for your client to defend. Coverage is really not even on the table yet. Well, coverage in the sense that it's a duty to defend first and foremost. Duty to defend. Yes. All right, you will have a chance to reply. Thank you. Counsel? Thank you. Good morning, and may it please the Court. Good morning. My name is Ethan Notarius, and I represent JLG in this case. The reason we are here today is because Tokyo Marine is going to skirt its obligation to provide defense and indemnity to JLG with respect to the underlying will of the lawsuit. There are three elements necessary for JLG to be entitled to coverage. The first is there needs to be a written contract requiring Illini to procure insurance. The second is the existence of a claim for bodily injury or property damage. The third is that that claim arises out of or relates to Illini's negligence. Counsel, isn't the coverage provided under the additional insured endorsement only cover injuries, as you just alluded to, that arise out of Illini's negligence in performing Illini's work? Yes, Your Honor. So the requirement is that it arises out of Illini's performance of work for JLG. Not for Illini's work. The liability must arise out of the work being performed by Illini for JLG. So, under the rent-to-own agreement, Illini expressly represented and warranted that it would provide training and warning to all operators of this lift. And that's for good reason, because JLG does not make contact with the end user of the lift in this situation. Now, Mr. Bassett has admitted that there is no evidence that Illini provided any training, or was on-site providing training, to Mr. Wilda Harvey's death. That's because they didn't, despite their obligation to do so. Now, this isn't merely a contractual obligation. These obligations arise out of the American National Safety Institute, OSHA regulations, and other contracts between Illini and JLG. So, when the plaintiff's complaint alleges that JLG failed to provide training and instruction to Mr. Wilda, this claim is filed squarely within the scope of coverage under the additional insurance endorsement. Now, Mr. Bassett contends that the additional insurance endorsement is broken into certain subparts or subsections. That there are separate captions that distinguish the first party and the third party liability coverage. He's correct to the extent that this agreement has subparts and subsections that represent... None of those create an ambiguity, though, right? Would you mind clarifying that? Did any of those create an ambiguity? The captions? The subparts, anything. Your position is there was no ambiguity, correct? Correct. That is correct. That's correct. So, the agreement does have subsections and captions that are represented in bolded text and underlined text. Notably absent from the insurance provision, the singular paragraph is any bolded or underlined text. Now, Illinois law requires that we ascertain the intent of the parties by looking at this section as a whole. We read each word in each sentence in light of the other words and sentences around them. Now, there would be a complete nullity to the phrase and or additional insurer if we were to accept Tokyo's interpretation of this provision. And that goes back to the basic understanding of what a lost payee is and what an additional insurer is. A lost payee doesn't have the right to pursue an action against an insurer. They have an insurable interest, and they're entitled to payment to cover that insurable interest. JLG's insurable interest was the lift when it was being rented to Illini. That insurable interest no longer exists. Illini owns the lift now. That explains why we have the additional insurer provision in there. And that's because it is to protect JLG from claims of third-party liability. Now, if we accept Tokyo Marine's interpretation, too, we would have nothing to do, we would not know what to do with this power of attorney clause, which is the last sentence in the paragraph. That clause grants JLG the power of attorney to present claims to the insurer and to endorse Illini's name on insurance payments. The only way to read this provision is to construe it as being the requirement to name JLG as a lost payee on first-party liability claims and as an additional insurer on the requirement to prepare third-party liability coverage. Otherwise, the power of attorney provision is completely redundant. An additional insurer has no need for that power of attorney. They already have the right to present claims against their insurer. Tokyo Marine also contends that the obligation only pertains to Service Plus. As this Court already pointed out, Tokyo raised that argument for the first time on appeal. Now, under Vantage Hospitality Group, which is a case we cited in our brief, they've waived this argument. They're entitled to make it on appeal. Tokyo Marine contends that this is subject to this exception to preserve justice. However, allowing Tokyo Marine to stay in this argument would not further the interest of justice. JLG could have taken a whole different approach to this case had Tokyo Marine raised these arguments in the trial court. They had the opportunity to do so. They made a motion to dismiss before filing an answer, a motion for summary judgment, a motion to reconsider. They never raised the argument until now. JLG could have amended its pleadings. For example, it could have presented different arguments. JLG could have dismissed the suit, and instead the suit may have been commenced by Service Plus. Or Service Plus could have assigned the entire contract to JLG because it is entitled to do so under the RetroAgreement. Tokyo Marine cites two cases in support of the proposition that the obligation in the customer insurance provision only required Illini to procure a certificate of insurance for first-party liability coverage. And it relies on United Stationers v. CERB and West Benforth v. Apples. In both of those cases, the insurance policy required the underlying contract to state that coverage would be mandated on the policy specifically. Here, our underlying contract is not so specific. It merely states, as required by written contract. But that's not the punch here. The punch is that in United Stationers and West Benforth, the certificate of insurance stated that the certificate confers no right upon a certificate holder and it does not amend or alter coverage afforded by the policies. There was no insurance certificate provided here. That was one of the key reasons for those two decisions. Additionally, the insurance provision here requires that that insurance certificate evidence coverage. If Illini could simply procure a certificate of insurance that did not evidence coverage, it would be in breach of the agreement. In other words, the obligation wasn't simply to provide a certificate of insurance for property coverage. It was to provide a certificate of insurance that evidences that the coverage actually exists. Now, Tocqueville-Marie also contends that JLG cannot satisfy the arising out of language. And as Justice Bridges referenced, the claims, they do arise out of the underlying complaint. The threshold to trigger a duty to defend is exceptionally low. All doubts have to be resolved in favor of coverage. The underlying complaint must only allege that acts are potentially within the scope of coverage. And furthermore, under American Economy Insurance v. DePaul and Selective Insurance v. Target, the arising out of requirement can exist even if the underlying complaint does not mention the named insured, which is what we have here. The underlying complaint doesn't mention the named insured, but surely the claims do arise out of Illini's negligence and its failure to perform its obligations to provide training and instruction under the rent-to-own contract. Furthermore, insurers are obligated to conduct insurance defense. It has knowledge of true but unplayed facts, which, when taken together with the underlying complaint, indicate that the claim is potentially within the scope of coverage. In associated indemnity, the court held that where an insurer had knowledge of true but unplayed facts, raising the possibility that the claim was within the scope of coverage, that would be sufficient. Furthermore... What are the unplugged facts here? The unplugged facts here? Mm-hmm. They are that the extensive expert testimony indicates that, one, Illini was indeed obligated to provide training and instruction to Mr. Willow, that JLG furnished Illini with a device that was designed to prevent inadvertent contact between the person occupying the platform and the controls of the platform. All the experts have testified that that device would have prevented this accident. Isn't it true that Wilder's complaint doesn't allege any negligence on behalf of Illini? In other words, it only alleges JLG's negligence, correct? It does not specifically assert a claim against Illini, but that's not the requirement here. It simply needs to implicate Illini's negligence. There's extensive case law here that holds that the claims will fall within the scope of coverage, even if the complaint does not remain a named insurer. So that's the situation we have here. This falls squarely within the holdings of American Economy Insurance v. DePaul and associated indemnity v. the insurance company of North America. Furthermore, Tokyo is already providing a defense to another party in the suit. The courts have held that when this is the case, the insurer is privy to the facts of the allegations in that lawsuit. In other words, when the insurer already provided coverage, combined with the claims in the Wilder complaint, there's no doubt that the claim satisfies the arising-out-of-work language. Illini also contends that we can't satisfy the arising-out-of-your-work requirement. Please finish your thoughts. Thank you, Your Honor. That we couldn't satisfy the your-work requirement. As I mentioned earlier, the March 2 own agreement required Illini to ensure all operators were fully trained. They failed to do so. Furthermore, the insurance policy expressly states that the term your-work includes representations of warranties regarding the scope of your work. And second, that it includes the requirement to provide instruction and training, or instructions and warrants. And that's exactly what we have here. Thank you, Your Honors. Thank you very much. Do you wish to reply? Very briefly, Your Honor. JLG suggests that because the contract, the lease agreement between Illini and JLG, contains those two separate terms, loss payee and additional insurer, that the proper way to give effect to both of those is to suggest that loss payee is for the first-party coverage that we talked about, and additional insurer is for the third-party liability coverage that we're talking about. As I indicated initially, there's a number of problems with that argument. First and foremost, there's a number of Illinois cases that address situations where additional insurers Counsel, let me hear you explain without – I know you disagree with JLG's version of it, but how do you explain this, those two, loss payee and additional? It's an option at this point, right? That Illini went out and purchased physical damage coverage for physical damage to this equipment. And it can do one of two things. It can specifically obtain a certificate or an additional insured endorsement, identify JLG as an additional insured party, or as Counsel suggested, they can be identified as a loss payee, which simply means that they're entitled to the payment proceeds if there's physical damage to the equipment. JLG gives Illini the choice to do either or. And if you look at the language in the lease agreement, under the physical damage to equipment portion, it obligates Illini to obtain a certificate of insurance naming service plus as a loss payee and or additional insured on said certificate evidencing coverage for physical damage to the equipment. It's specific about what that additional insured or loss payee status is for. It's for the physical damage to the equipment. It would be improper to then utilize that language and superimpose it in the obligations concerning liability coverage. Those liability coverage obligations are separately laid out two sentences later, after the heading bodily injury, property damage, responsibility to third parties. It then spells out Illini's obligation to get commercial general liability coverage in the amount of a million dollars. What they're trying to do is blend this all together and say this is one big insurance requirement, but that's not what the contract says, and they can't establish that it says otherwise. To do so would allow them to just say, well, whenever we ask you to get any type of coverage out there, auto coverage, whatever it may be, workers' compensation coverage, we can claim additional insured status because you also have this separate obligation to get liability coverage. That's not consistent with Illinois law. The obligation is on them. If they want a line to get liability coverage for their benefit, they need to put that in the contract, and they fail to do so. Unless the court has any other arguments, we ask that the court reverse the project's decision. Thank you. We are in recess.